1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11

TONG MOUA,

12
                        Plaintiff,

13
        v.

14
CAROLYN W. COLVIN, Acting
15
Commissioner of Social Security

16
                        Defendant.

17

**Case No. 1:15-cv-00970-EPG**

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

18   **I.      INTRODUCTION**

19          Plaintiff Tong Moua ("Plaintiff") seeks judicial review of the final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21   Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits

22   pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court

23   on the parties' briefs, which were submitted without oral argument to the Honorable Erica P.

24   Grosjean, United States Magistrate Judge.[1]  After review of the administrative record, the Court

25   finds the ALJ's decision is proper and is supported by substantial evidence in the record as a

26   whole.  Accordingly, this Court affirms the agency's determination to deny benefits and denies

27   Plaintiff's appeal.

28   ---
     [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (ECF Nos. 6, 8).

1

## II.    BACKGROUND AND PRIOR PROCEEDINGS

2

3        Plaintiff filed an application for DIB on June 25, 2009 and an application for SSI on July

22, 2010, alleging a disability onset date of October 15, 2008.[2]   AR 11.   His applications were

4

denied initially on November 10, 2009 and on reconsideration on April 7, 2010.   AR 71-81.   A

5

hearing was conducted before Administrative Law Judge Sharon L. Madsen (the "ALJ") on

6

November 15, 2011.   AR 355-73.   On November 23, 2011, the ALJ issued a decision finding that

7

Plaintiff was not disabled.   AR 374-89.   Plaintiff filed an appeal of the decision with the Appeals

8

Council.   AR 427-29.   The Appeals Council denied Plaintiff's appeal, rendering the order the

9

final decision of the Commissioner.   AR 390-93.   Plaintiff filed a Complaint before the Court on

10

March 27, 2013, challenging the ALJ's decision.   AR 394-408.   The Court found that the ALJ's

11

decision was legally erroneous, and remanded the case for further administrative proceedings.

12

AR 409-22.   A second hearing was conducted before the ALJ on February 26, 2015.   AR 331-54.

13

On April 17, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.   AR 310-24.

14        Plaintiff now challenges that decision, arguing that the ALJ:  (1) improperly gave less

15

weight than was warranted to the opinions of Dr. Popper and Dr. Parayno, and  (2) failed to

16

provide sufficient reasoning for discrediting Plaintiff's subjective complaints.   Defendant argues

17

that the ALJ provided specific and legitimate reasons to give less weight to Dr. Popper and Dr.

18

Parayno's opinions.   Additionally, Defendant argues that the ALJ properly rejected Plaintiff's

19

credibility.

20        A.    **Plaintiff's Testimony**

21        Plaintiff was 48 years old at the time of the first hearing and 51 years old at the time of the

22

second hearing.   AR 358.   Plaintiff is 4'10" and weighs about 140 pounds.   AR 334-35; 358.

23

Plaintiff lives with his wife and three adult children.   AR 335.   He has no formal education, but

24

attended adult school for two years.   AR 335; 359-60.   He has only limited English proficiency.

25

AR 335.   Plaintiff currently receives assistance in the form of Food Stamps.   AR 335.   Plaintiff

26

previously worked:  as a home attendant for his mother; as a mill laborer; and, most recently, as a

27

commercial custodian in 2012.   AR 337; 361-63; 370-71.

28

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

At the November 15, 2011 hearing, Plaintiff testified that high blood pressure and cholesterol, occasional lower back pain, depression and anxiety, and vision problems limit his ability to work.  AR 363-64; 367.  Plaintiff testified that he:  drives occasionally during the day; "know[s] a little bit" of English; has no problems showering, shaving, or dressing; and can wash dishes, sweep the floor, and use the microwave to heat up food.  AR 359-61; 367.  Plaintiff further testified he can focus on something for 20 to 30 minutes.  AR 367.  Plaintiff stated he takes depression medication every day, but only takes back medication when his back is hurting.  AR 364-65.  Plaintiff testified he suffers from auditory hallucinations.  AR 366.  Plaintiff further testified that he has a short temper and does not get along with anyone, including his own children.  AR 365.

At the second hearing on February 26, 2015, Plaintiff reported that, in addition to his previously described ailments, he has gout.  AR 339.  Plaintiff testified that:  it is hard to live with the gout; his back pain is always there; and he is always depressed.  AR 339; 345.  Plaintiff occasionally takes prescribed medication to treat pain in his back and pain from his gout.  AR 339.  Plaintiff experiences pain from gout between one and two weeks a month, but can bear weight on his foot during these periods.  AR 346.  Plaintiff reported that medication helps ease his pain and mood symptoms.  AR 339; 342.  Plaintiff testified that his vision problems can likely be corrected with glasses, but that he cannot afford them.  AR 343.  Plaintiff further testified that he can:  dress and shower himself; go shopping with his children; watch television for short intervals; and stand or sit for around an hour without needing a break.  AR 335-36; 345.  Plaintiff reported that he has a driver's license but does not drive.  AR 335.  Plaintiff reported still having anger and irritability issues, but testified that he can get along with family and strangers.  AR 341.  Plaintiff further testified that he cannot lift or carry more than 10 pounds.  AR 340.

**B.    Medical Record**

The entire medical record was reviewed by the Court, however, only evidence that relates to the issues raised in this appeal is summarized below.

### *i.    Kings Winery Medical Clinic*

Plaintiff was treated by a variety of medical providers at Kings Winery Medical Clinic

3

between July 2009 and December 2011.  In August 2009, Plaintiff came into the clinic reporting that "he was feeling depressed" and describing feelings of hopelessness, worthlessness, and low self-esteem.  AR 302.  He denied suicidal ideation, but expressed "positive death wishes."  AR 302.  He had been prescribed Buspar for his mood, which helped, but he reported hearing "loud noise."  AR 302.  Plaintiff was described as alert and cooperative with good eye contact.  AR 302. He had good short and long term memory, adequate abstract thinking, and fair judgment and insight.  AR 302.  He was diagnosed with major depressive disorder, single episode and prescribed Zoloft.  AR 302.

In October 2009, Plaintiff reported that the medication had helped him and that he was "feeling ok."  AR 300.  He was also sleeping better, could clean the house, and was socializing with friends.  AR 300.  He wanted to continue taking the medication.  AR 300.  In November 2009, he reported that he was feeling depressed again and was having trouble sleeping at night. AR 298.  Plaintiff's prescription dosage was increased.  AR 298.

In March 2010, Plaintiff reported that the medication was helping him and that he was "feeling ok."  AR 292.  His demeanor was pleasant and cooperative and his mood was described as normal.  AR 295.  By April 2010, Plaintiff was still taking his medication and reported "feeling good."  AR 293.  This continued into June 2010, when he reported that he spent his time watching television, listening to music, and watering plants outside.  AR 291.  This was also true in November 2010.  AR 285.

In February 2011, a physical examination showed normal range of motion in Plaintiff's joints and the ability to bend over and pick up items from the floor.  AR 282.  In March 2011, Plaintiff reported that he had been taking his medication and was "feeling good."  AR 281.  He was getting along with his wife and children, although he still reported being bothered by a loud noise.  AR 281.  Plaintiff reported similar feelings in May and June 2011.  AR 277, 279.  In late October 2011, Plaintiff was still reporting that he was "feeling good" and was able to sleep well at night.  AR 534.  He asked to continue the same medications and the doctor reported that he was "doing better."  AR 534.

///

1

ii.     *Examining Physician – Randy Shahbazian, M.D.*

2  Plaintiff underwent a psychiatric evaluation by Dr. Shahbazian on September 16, 2009.

3  AR 229-33.  Dr. Shahbazian noted that Plaintiff arrived on time, had good grooming and hygiene,

4  was cooperative, and appeared relaxed during the examination.  AR 229, 231.  Plaintiff seemed

5  oriented, was able to recall three out of three items at five minutes, and was able to perform

6  simple addition calculations.  AR 231-32.  Plaintiff reported that he:  suffered from depression;

7  had body aches; headaches; high blood pressure; was short-tempered; and had occasional panic

8  attacks.  AR 229-31.  Plaintiff also reported that his sleep was "not so good" due to hearing

9  "insect sounds."  AR 229.  Plaintiff denied having diabetes or any seizure disorder and denied

10  experiencing visual hallucinations or paranoia.  AR 230.  When asked about suicidal ideation,

11  Plaintiff stated that "there are times when I don't want to live anymore," however, Plaintiff

12  denied ever attempting or having current intentions of killing himself.  AR 229.  Plaintiff denied

13  any history of psychiatric hospitalizations.  AR 230.  Plaintiff discussed his time in a refugee

14  camp in Southeast Asia, but "denied having any traumatic experiences there."  AR 230.  Plaintiff

15  reported that his last job was in 2008 as a floor texture worker but that he was laid off when

16  business slowed.  AR 230.  Plaintiff stated that his appetite was normal and that he can do chores

17  such as washing dishes and dusting.  AR 229; 231.

18  Dr. Shahbazian diagnosed Plaintiff with:  major depressive disorder, single episode, mild;

19  anxiety; and hypertension.  AR 232.  Dr. Shahbazian noted that Plaintiff's eye contact was "poor

20  to fair."  AR 231.  However, Dr. Shahbazian found that Plaintiff's thought process was linear, and

21  that he maintained adequate focus and concentration during the examination.  AR 231.  Dr.

22  Shahbazian opined that Plaintiff could:  accept instructions from supervisors, interact with

23  coworkers and the public, perform work activities on a consistent basis without special or

24  additional instructions, maintain regular attendance in the workplace, complete a normal

25  workday/workweek without interruptions from a psychiatric condition, and deal with the usual

26  amount of stress encountered in competitive work.  AR 232-33.  Dr. Shahbazian further opined

27  that Plaintiff could perform simple and repetitive tasks, but stated that Plaintiff would have

28  moderate to severe difficulty performing detailed and complex tasks.  AR 232.  Dr. Shahbazian

concluded that Plaintiff's "depression appears largely related to the loss of his job in 2008. He enjoyed his work and likely would have significantly less depression if he were able to begin working again." AR 232.

The ALJ gave Dr. Shahbazian significant weight. AR 17.

### iii.    Reviewing Consultant – Brady Dalton, M.D.

Dr. Dalton reviewed Plaintiff's medical record on October 7, 2009. AR 238-41; 244-57. Dr. Dalton found Plaintiff was able to: remember basic workplace locations and procedures; remember, understand, and carry out simple instructions; follow simple work-like procedures; make simple work-related decisions; and perform at a consistent pace, especially if he was engaged in a simple, repetitive task. AR 238-40. Dr. Dalton also found that Plaintiff had a fair ability to sustain attention throughout extended periods of time. AR 240. Dr. Dalton opined that Plaintiff appeared to have a fair ability to remember detailed instructions. AR 240. Dr. Dalton further opined that Plaintiff could maintain a regular schedule; interact appropriately with the general public, co-workers and supervisors; and organize himself and independently set goals. AR 239-40.

The ALJ gave Dr. Dalton significant weight. AR 14.

### iv.    Consulting Examiner – James A. Nowlan, Jr., M.D.

On September 28, 2009, Dr. James A. Nowlan, Jr. met with Plaintiff and performed a consultative medical evaluation. AR 234-37. Plaintiff complained of high blood pressure, daily headaches lasting two to three hours, and back pain that would come and go. AR 234. Plaintiff reported that his high blood pressure was controlled and that medication relieved his headaches and back pain. AR 234. Dr. Nowlan noted Plaintiff's coordination was normal, and that he appeared well. AR 235. Dr. Nowlan found Plaintiff had 20/20 vision in his right eye and 20/25 vision in his left eye. AR 235. Range of motion of all joints and back were normal, motor strength was five out of five, reflexes were 2+ bilaterally in the upper and lower extremities, and sensation was normal throughout. AR 235-36.

Dr. Nowlan diagnosed Plaintiff with complaints of back pain with no significant findings. AR 236. He opined that Plaintiff could stand and walk six hours and sit without restriction in an

eight-hour workday, and could lift and carry 25 pounds frequently and 50 pounds occasionally. AR 236.  Dr. Nowlan further opined that Plaintiff has no postural, manipulative, or environmental limitations.  AR 237.

The ALJ gave Dr. Nowlan's opinion significant weight overall, but noted that his proposed limitations were overly restrictive.  AR 18.

### v.      Reviewing Consultant – Ernest Wong, M.D.

Dr. Wong reviewed Plaintiff's medical record on October 28, 2009.  AR 242-43.  Dr. Wong found that Plaintiff was able to maintain personal hygiene and standards of dress.  AR 242. Dr. Wong opined that Plaintiff had no difficulty standing, walking, sitting, using his hands, or writing.  AR 242-43.  Dr. Wong concluded that Plaintiff's residual functional capacity is properly listed as non-severe due to no significant physical examination deficits.  AR 243.  The ALJ gave Dr. Wong's opinion some weight.  AR 321.

### vi.      Reviewing Consultant – A. Schrift, Ph.D.

Dr. Schrift reviewed Plaintiff's medical record on March 18, 2010.  AR 266-67.  Dr. Schrift's assessment is consistent with Dr. Wong and Dr. Dalton's opinions.  AR 266-67.  Dr. Schrift found that the medical record provided "minimal objective findings of work limitations." AR 267.  Dr. Schrift opined that Plaintiff's mental status and memory and concentration is intact. AR 267. The ALJ gave Dr. Schrift some weight.  AR 321.

### vii.      Reviewing Consultant – Brian Ginsburg, M.D.

Dr. Ginsburg reviewed Plaintiff's medical record on March 18, 2010.  AR 266-67.  Dr. Ginsburg concluded that Plaintiff's physical impairments were non-severe.  AR 267.  The ALJ gave Dr. Ginsburg some weight. AR 321.

### viii.      Examining Physician – Mark D. Popper, M.D.

Plaintiff underwent a psychological evaluation by Dr. Popper on November 8, 2011.  AR 307-09.  Plaintiff's chief complaints were of anxiety, repetitive and irrational thoughts about his health, lack of satisfaction with life, thoughts of death, unhappiness, feelings of alienation from others, irritability, and withdrawn mood and behaviors.  AR 307.  Plaintiff also reported sadness and fear as a child from the death of his father and stories of communist guerillas near his village,

thoughts about how it would be if he were dead, unexplained insect and falling object sounds, unexplained sensations in his body, and recent family stress.  AR 307-8.   Dr. Popper noted that Plaintiff:  was cooperative and focused during the interview; demonstrated an idiosyncratic communication pattern; was well-oriented in person, place, and situation; demonstrated only limited memory impairment during the interview; and demonstrated sound judgment.  AR 308-9. Dr. Popper found that Plaintiff's cognitive functioning appeared intact.  AR 308.  Dr. Popper also noted that Plaintiff:  had poor eye contact; seemed to struggle to understand directions, but quickly established rapport; answered questions with some difficulty; and seemed distracted during the evaluation, occasionally derailing or diverting to other topics.  AR 308.  Dr. Popper found Plaintiff's mood to be euthymic, and his affect to be somewhat bland or stoic.  AR 309.

Dr. Popper opined that the "combination of [Plaintiff's] early life experiences, struggles with perceptions of stress, perceptual experiences, social withdrawal, irritability, thoughts of death, and outbursts toward family may all be expected to impact his social and vocational functioning, particularly in his responses to others in a public workplace. It is questionable as to whether he could engage in substantial gainful activity based on the results of the current psychological evaluation."  AR 309.

The ALJ incorporated Dr. Popper's recommendation that Plaintiff have little public contact, but otherwise gave Dr. Popper little weight.  AR 18.

### ix.    *Mountain Family Healthcare Center*

Plaintiff presented to Mountain Family Healthcare Center on March 6, 2013 to establish care for hypertension and allergies.  AR 559.  On April 12, 2013, Plaintiff reported tenderness in his elbow and headaches.  AR 558.  On May 22, 2013, Plaintiff reported pain in both shoulders. AR 557.  On October 24, 2013, Plaintiff presented to the healthcare center with complaints of headaches and back pain.  AR 556.  Straight leg raises were positive at 30 degrees.  AR 556. Plaintiff reported that the pain was "controlled with medications."  AR 556.  On May 7, 2014 and June 25, 2014, Plaintiff continued to complain of back pain and was prescribed Ultram.  AR 553-54.

On August 26, 2014, Plaintiff reported that he was only taking his medication "here and

there;" however, on November 5, 2014, he reported that he was taking his medications as prescribed and was doing well.  AR 549; 552.  On December 30, 2014, Plaintiff reported that he was taking medications without difficulty but was not taking them as prescribed.  AR 548.  Plaintiff also reported that he was doing well, and reported no complaints of headaches or chest pain.  AR 548.  On January 6, 2015, Plaintiff reported that he had been experiencing depression and sadness that worsened from the previous month.  AR 546.  Plaintiff reported low energy and feeling sad almost daily.  AR 546.  Plaintiff also reported that his Ultram medication was no longer helping with his back pain.  AR 546.  He also reported that he was not taking his medication as prescribed.  AR 548.

X-rays of Plaintiff's left shoulder and lumbar and thoracic spine were taken on October 10, 2014.  AR 561; 563.  The x-ray of Plaintiff's left shoulder found no evidence of fracture or dislocation, and the report concluded that the left shoulder was normal.  AR 563.  The x-ray of Plaintiff's lumbar and thoracic spine indicated endplate spurs at L3-4, L4-5, and T8-9 levels.  AR 560-62.

### x.      *Maximo A. Parayno, Jr., M.D.*

On January 3, 2015, Dr. Parayno completed a mental residual functional capacity questionnaire in regards to Plaintiff.  AR 572-74.  Dr. Parayno noted Plaintiff's first visit was on November 27, 2010 and reported that he saw Plaintiff every six to eight weeks.[3]  AR 573.

Dr. Parayno performed a psychiatric evaluation of Plaintiff on January 31, 2015.  AR 579-83.  Plaintiff complained of depression, forgetfulness, poor sleep and appetite, and recurrent nightmares and flashbacks.  AR 580.  Plaintiff described traumatic events during the Vietnam War when he lived in a refugee camp in Thailand.  AR 581.  Plaintiff reported experiencing outbursts of anger, irritability, detachment, hypervigilance, problems with concentration, loss of tender and loving feelings for people, and a sense of a foreshortened future.  AR 581.  Plaintiff reported that he has never been hospitalized for his physical problems.  AR 581.

Dr. Parayno found that Plaintiff's "affect was blunted and his mood was definitely depressed."  AR 582.  Plaintiff reported that he did not do much at home, usually stayed in his

---

[3] There is no evidence in the record corroborating the earlier visits.

bedroom, occasionally watched television, and did not like to attend social events or visit friends or family.  AR 583.  Plaintiff denied suicidal ideations or homicidal impulses, auditory or visual hallucinations, and cognitive distortions.  AR 582.

Dr. Parayno opined that from significant losses with the death of his father and mother, Plaintiff developed recurrent and severe depression with loss of interest and pleasure in life and feelings of hopelessness and worthlessness with inappropriate guilt.  AR 581.  Dr. Parayno further opined that Plaintiff had:  impaired concentration and attention span; impaired remote and recent memory; and impaired social judgment.  AR 582.

In particular, Dr. Parayno opined that Plaintiff was unable to remember locations and work-like procedures for 15% or more of an eight-hour work day.  AR 573.  Dr. Parayno further opined that Plaintiff's behavioral condition exacerbated Plaintiff's experiences of pain or other physical symptoms.  AR 574.  Dr. Parayno estimated that Plaintiff would likely be absent or unable to complete an eight-hour workday five days or more each month.  AR 574.  Dr. Parayno noted that Plaintiff had reduced intellectual functioning in regards to memory, concentration, and attention span.  AR 574.

Dr. Parayno diagnosed Plaintiff with major depressive disorder, recurrent, severe without psychotic features; and post-traumatic stress disorder, chronic.  AR 582.  Dr. Parayno concluded that "[i]n view of his multiple medical problems such as Insulin Dependent Diabetes Milletus, high blood pressure, recurrent migraine headaches, chronic body pain and his Major Depressive Disorder, recurrent, severe and Post-Traumatic Stress Disorder, Chronic, it is apparent he is unable to engage in any substantial gainful activity. He is both physically and mentally disabled." AR 583.

The ALJ gave Dr. Parayno's opinion little weight.  AR 322.

### xi.    Pushpa Gursahani, M.D.

Dr. Gursahani completed a physical medical source statement dated January 8, 2015.  AR 575-78.  Dr. Gursahani indicated that she has been treating Plaintiff since March 6, 2013 for hypertension, allergies, headaches, shoulder pain, lumbago, gout, depression, and insomnia.[4]  AR

---

[4] Dr. Gursahani's statement is stamped with the address for the Mountain Family Healthcare Center. As the ALJ

576; 578.  Dr. Gursahani found that Plaintiff could walk two city blocks without rest or severe pain.  AR 576.  Dr. Gursahani also found that Plaintiff could sit and stand for 30 minutes at a time, but could only sit, stand, or walk for less than two hours in an eight-hour work day.  AR 576.  Dr. Gursahani estimated that Plaintiff could use his hands, fingers and arms for only 20 percent of the workday.  AR 577.  Dr. Gursahani noted Plaintiff would need unscheduled breaks every 30 minutes to one hour for 10-15 minutes.  AR 578.  Dr. Gursahani found that Plaintiff could rarely lift 10 pounds and could rarely twist, stoop, squat, and climb stairs and ladders.  AR 577.  Dr. Gursahani opined that Plaintiff would be "off task" for 25 percent or more of the time during a typical workday.  AR 577.  Dr. Gursahani further opined that due to depression and anxiety, Plaintiff was incapable of even low stress work and would miss more than five days of work each month.  AR 577-78.

The ALJ gave Dr. Gursahani's opinion little weight.  AR 323.

### III.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1502(a)-(f), 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.920(a)(4) and

---

notes, however, Plaintiff does not appear to have seen Dr. Gursahani at the Mountain Family Healthcare Center.  AR 323.

404.1502(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 404.1527, 416.1529, 416.927, and 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[5] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work,[6] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

A.      The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 310-24.  More particularly, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013.  AR 315.  The ALJ further found that Plaintiff had engaged in substantial gainful activity for five to six months in 2012, but that there had been a continuous 12-month period during which Plaintiff had not engaged in substantial gainful activity since the date of filing his application.  AR 315.  The ALJ identified lumbar and thoracic degenerative disc disease, gout, and major depressive disorder as severe impairments.  AR 315.  Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 316.

Based on the review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work.  AR 317.  The ALJ found that Plaintiff is

---

[5] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[6] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545, 416.945.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently.  AR 317.  The ALJ determined that Plaintiff can stand, walk, and/or sit for six to eight hours in an eight-hour work day.  AR 317.  The ALJ further determined that Plaintiff is able to perform simple routine tasks with occasional public contact.  AR 317.  Based on this RFC, the ALJ determined that Plaintiff could perform his past relevant work as a mill laborer and commercial custodian.  AR 323.

## IV.   STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether:  (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id.*

## V.   DISCUSSION

### A.   The ALJ Properly Weighed the Medical Source Opinions.

Plaintiff argues that the ALJ failed to properly weigh probative medical source opinions.  (Plaintiff's Opening Brief at 7, ECF No. 16.)  Specifically, Plaintiff contends that the ALJ did not provide specific and legitimate reasons for rejecting the opinions of Dr. Parayno and Dr. Popper.

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*,

80 F.3d 1273, 1285 (9th Cir. 1996).

However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  *Id.* at 830.  While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."  *Thomas*, 278 F.3d at 957.  Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's

14

1   opinion.  *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

2                    *i.        Mark D. Popper, M.D.*

3           Dr. Popper performed a psychological evaluation upon Plaintiff on November 8, 2011.

4   The ALJ gave little weight to Dr. Popper's opinion "because it [was] not particularly helpful in

5   determining what the claimant [was] able to do, and [was] inconsistent with the overall record.

6   The medical record indicates that claimant's symptoms were stable and his medication was

7   helping with depression, he was sleeping well" and "he was able to walk around the time of this

8   evaluation."  AR 321.  An ALJ may reject a medical opinion that includes "no specific

9   assessment of [the claimant's] functional capacity" during the relevant time period.  *Johnson v.*

10  *Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).  Likewise, an ALJ can disregard a medical report that

11  does "not show how [a claimant's] symptoms translate into specific functional deficits which

12  preclude work activity."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th

13  Cir.1999); *see also Meanel*, 172 F.3d at 1114 (ALJ properly rejected a medical opinion that failed

14  to explain the extent or significance of a condition).

15          After reviewing the record, the Court finds that the ALJ provided specific and legitimate

16  reasons for discounting the opinion of Dr. Popper.  As an initial matter, the ALJ is correct that Dr.

17  Popper does not explain specific functional deficits for the ALJ to incorporate into an RFC.

18  Rather, he merely concludes that Plaintiff is unable to "engage in substantial gainful activity," an

19  assessment that is not helpful to the ALJ.  To the extent that Dr. Popper did provide functional

20  limitations—Plaintiff's difficulties in social functioning—the ALJ appears to have incorporated

21  Dr. Popper's opinion into the RFC by limiting Plaintiff to only occasional public contact.  AR

22  321 ("I take this opinion into consideration and give some weight to the restricton on public

23  contact."); *Morse v. Colvin*, 31 F.Supp.3d 1129, 1137 (E.D. Wash. 2014) (moderate impairment

24  with social functioning adequately accommodated by RFC limiting contact with general public).

25          Moreover, the record as a whole supports the conclusion that Plaintiff's symptoms are

26  relieved by medication, suggesting that the limitations Dr. Popper proposes are inconsistent with

27  the medical record.  In at least eight separate instances in the record, Plaintiff reported to

28  physicians that his psychological symptoms were being well controlled by medication.  *See, e.g.,*

AR 277, 279, 281, 285, 291, 292, 293, 295, 300, 534.  Similar results occurred with respect to his physical symptoms.  For example, on September 28, 2009, Plaintiff reported to Dr. Nowlan that his blood pressure was controlled and that medication relieved his headaches and back pain.  AR 234.  On October 24, 2013, Plaintiff reported to the Mountain Family Healthcare Center that his pain was "controlled with medications."  AR 556.  The evidence in the record supports the ALJ's conclusion that Plaintiff's symptoms are easily controlled and thus warrant no more than mild restrictions.  *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Plaintiff contends that Dr. Popper's opinion is more recent than the other opinions the ALJ relies on and that those opinions merely document "brief instances of stability" in Plaintiff's condition.  (Plaintiff's Opening Brief at 9:13-24, ECF No. 16.)  But the records that are inconsistent with Dr. Popper's opinion appear to document long stretches of time during which Plaintiff's symptoms were apparently well controlled.  For instance, the records from the Kings Winery Medical Clinic document nearly two years of Plaintiff's treatment history on a monthly basis and demonstrate that Plaintiff's symptoms were controlled with medication.  The records also show a more recent correlation between Plaintiff's medication and his lack of symptoms— the records from the Mountain Family Healthcare Center show that Plaintiff's symptoms only worsened when he failed to take his medication as prescribed.  Notably, those records date from 2013, 2014, and 2015.  The ALJ did not commit any error in rejecting Dr. Popper's opinion based on this evidence.

### ii.    *Maximo A. Parayno, Jr., M.D.*

Dr. Parayno completed a mental residual functional capacity questionnaire on January 3, 2015 and a psychiatric evaluation on January 31, 2015.  AR 572-74; 579-83.  Though Dr. Parayno noted Plaintiff's first visit to his office was November 27, 2010, and reported that he saw Plaintiff every six to eight weeks, the ALJ noted that "[t]he treatment records do not indicate any recent mental symptoms or treatment until one month prior to the hearing."  AR 322.  The ALJ appears to be correct—the record does not include any treating records from Dr. Parayno and the

questionnaire and evaluation were furnished by Plaintiff's attorney.  Dr. Parayno diagnosed Plaintiff with depression, PTSD, diabetes, high blood pressure, recurrent headaches, and chronic body pain.  AR 583.  Dr. Parayno opined that in view of Plaintiff's multiple physical and mental impairments, Plaintiff was not able "to engage in any substantial gainful activity" and was both "physically and mentally disabled."  AR 583.  The ALJ gave little weight to Dr. Parayno's opinion because Dr. Parayno's diagnosis was not supported by treatment records.  AR 322.  Specifically, the ALJ noted that "the record does not support a diagnosis of insulin dependent diabetes mellitus, and although there are some intermittent complaints of headaches, a diagnosis of recurrent migraine headaches is not supported by the treatment records."  AR 322.  The ALJ also noted that Dr. Parayno's opinion "that the claimant cannot engage in substantial gainful activity invades on an opinion reserved to the Commissioner."  AR 322.

"The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  As a result, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion "alone constitutes substantial evidence" to reject treating physician's opinion where it "rests on his own independent examination").  It was thus within the ALJ's discretion to give more credence to Dr. Shahbazian's results from his mental status examination than Dr. Parayno's results from his mental status examination if the ALJ determined that Dr. Shahbazian's results were more consistent with the evidence in the record.

Such a finding is supported by substantial evidence.  As explained above, there is ample evidence in the record demonstrating that Plaintiff's symptoms were mild enough to be easily controlled with medication, establishing that his symptoms did not create the limitations Dr. Parayno claims.  Moreover, several clinical findings in the record directly contradict Dr. Parayno's findings of Plaintiff's particular symptoms or conditions.  For example, Dr. Parayno describes Plaintiff's recurrent migraine headaches as a condition that limits his functioning.  AR

230.  But both Dr. Shahbazian and Dr. Nowlan describe Plaintiff's headaches as far less severe

than Dr. Parayno does.  AR 229-31; 234.  On December 30, 2014, Plaintiff reported no

complaints of headaches.  AR 548.  Nor are there many instances in the record supporting the

existence of Plaintiff's "recurrent migraine headaches"—Plaintiff cites to a 28 page range of

documents in the record to show that "[t]he record does support ongoing problems with

headaches," but there are only four references to headaches in those 28 pages.  (Plaintiff's

Opening Brief at 11:4, ECF No. 16, *citing* AR 544-571.)  Even those references are incidental, at

best, and do not support a finding such as Dr. Parayno's.  A reasonable factfinder could conclude

that Plaintiff experiences headaches only occasionally and that medication relieves the pain

Plaintiff experiences.  Such a finding undercuts the reliability of Dr. Parayno's evaluation and his

conclusions.  The ALJ did not commit error in rejecting Dr. Parayno's opinion.

> **B.**      **The ALJ's Credibility Determination was Proper.**

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for

discounting Plaintiff's testimony with regard to the severity of his symptoms.  In particular,

Plaintiff objects to the ALJ's consideration of Plaintiff's statements about his depression

symptoms.

A two-step analysis applies at the administrative level when considering a claimant's

credibility.  *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014).  First, the

claimant must produce objective medical evidence of an impairment that could reasonably be

expected to produce some degree of the symptom or pain alleged.  *Id.*  If the claimant satisfies the

first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

regarding the severity of his symptoms only if she makes specific findings and provides clear and

convincing reasons for doing so.  *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)

(ALJ's decision "must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons

for that weight.").  Factors an ALJ may consider include, among others:  (1) the applicant's

reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2)

unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

1  of treatment; and, (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th

2  Cir. 1996). Work records, physician and third party testimony about the nature, severity, and

3  effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

4  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). It is not the role of the Court to re-

5  determine Plaintiff's credibility *de novo*. If the ALJ's finding is supported by substantial

6  evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

7      In this case, following consideration of the evidence and an in-person hearing, the ALJ

8  found that Plaintiff's "medically determinable impairments could reasonably be expected to cause

9  the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and

10 limiting effects of these symptoms are not entirely credible." AR 318. This finding satisfied step

11 one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

12     The ALJ did not find that Plaintiff was malingering and was therefore required to provide

13 clear and convincing reasons for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F. 3d at 493;

14 *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended).

15 When there is evidence of an underlying medical impairment, the ALJ may not discredit the

16 claimant's testimony regarding the severity of his or her symptoms solely because they are

17 unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

18 Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not

19 credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F.3d at

20 493.

21     The ALJ found Plaintiff's allegations not credible because Plaintiff's reported loss of

22 function was not supported by the medical evidence and record as a whole. In making this

23 determination, the ALJ cited evidence in the record that: (1) Plaintiff "has not had the type of

24 treatment one would expect from a completely disabled individual"; (2) Plaintiff "stopped

25 working in 2008 because he was laid off from his job, not because of a medically determinable

26 impairment"; and (3) Plaintiff "has not been compliant with his medication even though his

27 symptoms improve when he is taking them." AR 318. The ALJ also noted that Plaintiff "worked

28 for five to six months since his alleged onset date, indicating an ability to work." AR 318.

1   The ALJ found that Plaintiff had not had the type of treatment one would expect from a

2   completely disabled individual.  A claimant's statements may be less credible if the level or

3   frequency of treatment is inconsistent with the level of complaints.  *See* 20 C.F.R. §§

4   404.1529(c)(3)(v), 416.929(c)(3)(v); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007)

5   (conservative treatment evidence that a claimant is not credible).  Furthermore, an ALJ is

6   permitted to consider "ordinary techniques for credibility evaluation," *Burch*, 400 F.3d 676, 980

7   (9th Cir. 2005), and to make inferences "logically flowing from the evidence," *Macri v. Chater*,

8   93 F.2d 540, 544 (9th Cir. 1996).  The ALJ found that Plaintiff has not received formal mental

9   health treatment beyond medication management.  AR 319; *see also* AR 280; 548; 553-54; 556-

10  57.  Plaintiff testified he has never been hospitalized for his physical or mental impairments.  AR

11  230; 581.  The medical record shows that Plaintiff's medical history is composed primarily of

12  routine office visits to manage his blood pressure and psychiatric medication management

13  checkups.  AR 229-33; 234-37; 307-09; 549-62; 572-83.  The type of treatment provided within

14  the record could lead a reasonable factfinder to infer that Plaintiff's symptoms were not as severe

15  as alleged.

16  Plaintiff argues that he has followed the "recommended course of treatment" and should

17  not be faulted for failing to pursue more aggressive or intensive treatment.  (Plaintiff's Opening

18  Brief at 14:1-8, ECF No. 16.)  But the argument that the ALJ is making is not that Plaintiff has

19  failed to follow more aggressive prescribed treatment—it is that the conservative prescribed

20  course of treatment demonstrates that Plaintiff's symptoms are not as severe as he alleges.

21  The ALJ also found that Plaintiff stopped working in 2008 because he was laid off from

22  his job, not because of a medically determinable impairment.  An ALJ may discount symptom

23  testimony where the claimant was laid-off from work for reasons unrelated to the alleged

24  symptoms.  *Drouin v. Sullivan*, 966 F.2d 1255, 1256 (9th Cir. 1992).  Plaintiff reported that "he

25  was laid off from his job when business slowed."  AR 230.  Plaintiff contends that he has, at other

26  points in the record, stated that he stopped working because of his symptoms.  (Plaintiff's

27  Opening Brief 14:9-11, ECF No. 16.)  But the pages cited by Plaintiff do not support this

28  contention.  Moreover, evidence in the record indicates that Plaintiff worked *after* the 2008

20

1   termination of his employment (and thus after the date of his alleged disability) and received

2   unemployment benefits, indicating that he considered himself capable of work and was presenting

3   himself as available for work.  *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming

4   credibility finding where ALJ rejected credibility because plaintiff "left work because he was laid

5   off" and "received unemployment insurance benefits thereafter"); AR 144, 338.  It was within the

6   ALJ's discretion to take this information into consideration when analyzing Plaintiff's credibility.

7         Given the above, the ALJ provided clear and convincing reasons that are supported by

8   substantial evidence to conclude Plaintiff's subjective symptom testimony was not fully credible.

9   The ALJ clearly identified what testimony he found not credible (AR 319 ("The claimant has

10  reported anxiety and depression")) and what evidence undermined Plaintiff's complaints (AR 319

11  ("The records indicate that his medications help his symptoms")).  *Brown-Hunter,* 806 F. 3d at

12  493; *Lester,* 81 F.3d at 834.  Even if evidence supporting an ALJ's conclusions might also permit

13  an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was

14  rational, as it was here, the Court must uphold the ALJ's decision.  *Burch*, 400 F.3d at 680-81.

15  Accordingly, the ALJ's credibility determination was proper.

16  **VI.    CONCLUSION**

17        Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not

18  disabled as defined by the Social Security Act is supported by substantial evidence in the record

19  as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's

20  appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of

21  this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the

22  Commissioner of Social Security and against Plaintiff Tong Moua.

   IT IS SO ORDERED.

23

24     Dated:   **August 19, 2016**           /s/ *Erica P. Grosjean*

25                                      UNITED STATES MAGISTRATE JUDGE

26

27

28